**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MONAHAN PRODUCTS, LLC D/B/A UPPABABY,<br><br>             Plaintiff,<br><br>     v.<br><br>DOREL JUVENILE GROUP, INC.<br><br>             Defendant. | Civil Action No.<br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR CORRECTION OF INVENTORSHIP, BREACHES OF
CONTRACT, AND DECLARATORY JUDGMENT OF OWNERSHIP OF
U.S. PATENT NO. 9,315,124**

Plaintiff Monahan Products, LLC d/b/a UPPAbaby ("UPPAbaby"), by and through counsel, for its Complaint against Defendant Dorel Juvenile Group, Inc. ("Dorel") alleges on knowledge as to its actions, and upon information and belief as to the actions of others, as follows:

This is an action for correction of inventorship under 35 U.S.C. § 256 with respect to U.S. Patent No. 9,315,124 ("the '124 Patent"), breach of contract, and declaratory judgment of UPPAbaby's ownership of the '124 Patent. In addition, this is an action for breach of contract based on Dorel's failure to disclose the '124 Patent to UPPAbaby and failure to assign the '124 Patent to UPPAbaby. UPPAbaby brings this action in response to a cease and desist letter it received from counsel for Dorel in which Dorel threatened to sue UPPAbaby for infringing the '124 Patent unless UPPAbaby pays a licensing fee to continue selling UPPAbaby's MESA® infant car seat.

Despite Dorel's demands, Dorel is not the rightful owner of the '124 Patent. UPPAbaby is the rightful owner of the '124 Patent. UPPAbaby owns the '124 Patent for at least two reasons: (1) UPPAbaby co-invented the claimed invention with Dorel's predecessor; and (2) Dorel was contractually obligated to disclose the '124 Patent to UPPAbaby and assign it to UPPAbaby.

Accordingly, UPPAbaby seeks an order directing the Director of the U.S. Patent and Trademark Office to correct inventorship of the '124 Patent and an order directing Dorel to assign ownership to UPPAbaby as required by the parties' contract.

## NATURE OF THE ACTION

1.      This is an action for correction of inventorship under 35 U.S.C. § 256 with respect to U.S. Patent No. 9,315,124 ("the '124 Patent"), breach of contract, and declaratory judgment of UPPAbaby's ownership of the '124 Patent.

2.      A true and correct copy of the '124 Patent is attached as Exhibit A.

3.      In addition, this is an action for breach of contract based on Dorel's failure to disclose the '124 Patent to UPPAbaby and failure to assign the '124 Patent to UPPAbaby.

4.      UPPAbaby brings this action in response to a cease and desist letter it received from counsel for Dorel in which Dorel threatened to sue UPPAbaby for infringing the '124 Patent unless UPPAbaby pays a licensing fee to continue selling UPPAbaby's MESA® infant car seat.

5.      UPPAbaby and Dorel's predecessor together invented novel features of UPPAbaby's MESA® infant car seat as a result of a joint collaboration.

6.      UPPAbaby's designers made significant contributions to the conception of the invention claimed in the '124 Patent.

7.      UPPAbaby paid Dorel's predecessor monetary compensation for its portion of design, engineering, and manufacturing services related to UPPAbaby's MESA® infant car seat.

8.      Dorel's predecessor filed the '124 Patent without UPPAbaby's knowledge or consent and without naming UPPAbaby's designers as co-inventors.

9.      Dorel acquired the '124 Patent from Dorel's predecessor.

10.     Dorel was contractually obligated under the parties' contract to disclose its acquisition of the '124 Patent to UPPAbaby.

11.     Dorel did not disclose its acquisition of the '124 Patent to UPPAbaby.

12.     Dorel agreed under the parties' contract that UPPAbaby exclusively owns all intellectual property rights related to UPPAbaby products.

13.     Dorel was contractually obligated under the parties' contract to assign the '124 Patent to UPPAbaby.

14.     Dorel did not assign the '124 Patent to UPPAbaby.

15.     Dorel in bad faith is now asserting the '124 Patent, which UPPAbaby co-invented and owns under the parties' contract, against UPPAbaby to extract undeserved licensing revenues.

## THE PARTIES

16.     UPPAbaby is a Massachusetts limited liability company with its principal place of business at 276 Weymouth Street, Rockland, MA 02370.

17.     UPPAbaby was founded in 2006 and is an innovative American company with the mission of inventing, designing, developing, and manufacturing high-quality baby products that improve the lives of parents and caregivers.  UPPAbaby's strollers and car seats are recognized worldwide as a high-end, luxury brand and status symbol.

18.     On information and belief, Dorel Juvenile Group, Inc. is a Massachusetts corporation with its principal place of business at 25 Forbes Boulevard, Suite 4, Foxboro, MA 02035.

19.     On information and belief, Dorel's registered agent for service of process is Corporation Service Company, 84 State Street, Boston, MA 02109.

## JURISDICTION AND VENUE

20.     This action is brought under the patent laws of the United States, codified at 35 U.S.C. § 101 *et seq.*, including 35 U.S.C. § 256 ("Correction of named inventor") and 35 U.S.C. § 261 ("Ownership; assignment").  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

21.     UPPAbaby's additional claim for breach of contract is sufficiently related to UPPAbaby's federal law claim for correction of inventorship that they form part of the same case or controversy under Article III of the United States Constitution.   Thus, this Court has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367.

22.     Further, this action is brought under the Declaratory Judgment Act, codified at 28 U.S.C. §§ 2201 *et seq.*  Declaratory judgment jurisdiction is proper because there is a case or controversy between UPPAbaby and Dorel with respect to the inventorship and ownership of the '124 Patent, and the Court may grant the relief sought pursuant to 28 U.S.C. §§ 2201 and 2202.

23.     Personal jurisdiction and venue are proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) because Dorel resides in this Judicial District and a substantial part of the events or omissions giving rise to the claims occurred in this Judicial District.  In addition, venue of this action is properly found in this Judicial District pursuant to 28 U.S.C. § 1391(b) and (c) because Dorel is subject to personal jurisdiction in this Judicial District.

## FACTUAL BACKGROUND

### History of Collaborations Between UPPAbaby and Lerado

24.     Beginning in approximately 2006, UPPAbaby and its former supplier, Hong Kong-based Lerado Group ("Lerado"), collaborated routinely and extensively on multiple juvenile products, including infant car seats.

25.     UPPAbaby paid Lerado monetary compensation for its design, engineering, and manufacturing services.

26.     UPPAbaby and Lerado agreed that UPPAbaby, as paying customer and joint contributor to product design, owned the intellectual property resulting from the UPPAbaby/Lerado collaborations.

27.     Two of UPPAbaby's designers, Trung Phung and Eric Perlman, were frequent contributors to the UPPAbaby/Lerado collaborations.  Two of Lerado's designers, David Andrew Lehman and Scott Anderson, were also frequent contributors.  Messrs. Phung, Perlman, Lehman, and Anderson collaborated routinely and extensively on multiple juvenile products, including infant car seats.

28.     During the collaborations, Mr. Phung was UPPAbaby's Director of Design.  Mr. Phung is now UPPAbaby's President.  He holds a B.S. in Industrial Design from California State University Long Beach and has almost 30 years of design experience.  Mr. Phung is a named inventor on four U.S. patents assigned to Plaintiff Monahan Products, LLC.

29.     During the collaborations, Mr. Perlman was UPPAbaby's Director of Industrial Design, a title which he continues to hold today.  He also holds a B.S. in Industrial Design from Wentworth Institute of Technology and has almost 25 years of design experience.  Mr. Perlman is a named co-inventor with Mr. Phung on three U.S. patents assigned to Plaintiff Monahan Products, LLC.

30.     All of Messrs. Phung, Perlman, Lehman, and Anderson are named co-inventors on one U.S. Patent filed in 2012 and assigned to Plaintiff Monahan Products, LLC.

## Joint Inventorship of UPPAbaby's MESA® Infant Car Seat

31.    In approximately 2009, UPPAbaby and Lerado, through the joint efforts of Messrs. Phung, Perlman, Lehman, and Anderson, began joint collaborations on a novel infant car seat for UPPAbaby named the MESA®.

32.    UPPAbaby paid Lerado monetary compensation for its design, engineering, and manufacturing services related to UPPAbaby's MESA® infant car seat.

33.    UPPAbaby and Lerado agreed that UPPAbaby, as a paying customer and joint contributor to product design, owned the intellectual property resulting from the UPPAbaby/Lerado collaborations related to UPPAbaby's MESA® infant car seat.

34.    From approximately 2009-2013, Messrs. Phung, Perlman, Lehman, and Anderson collaborated jointly on a weekly basis on UPPAbaby's MESA® infant car seat.

35.    On or about November 18, 2009, Messrs. Phung, Lehman, and Anderson attended an in-person meeting at Lerado's U.S. facilities in Lancaster, PA, during which they began collaboration on UPPAbaby's MESA® infant car seat including the base assembly.

36.    On or about June 11, 2010, Messrs. Phung, Lehman, and Anderson continued collaboration on UPPAbaby's MESA® infant car seat including the base assembly.

37.    On or about November 11, 2010, Messrs. Phung, Lehman, and Anderson attended an in-person meeting at a rental conference room in Philadelphia, PA during which they continued collaboration on UPPAbaby's MESA® infant car seat including the base assembly.  The meeting lasted four hours.  According to Mr. Phung's notes, both UPPAbaby (through Mr. Phung) and Lerado (through Mr. Lehman and Mr. Anderson) made significant contributions to the joint collaboration and to conception of the inventions later claimed in the '124 Patent including Mr. Phung's idea of "moving the tension meter system to the foot so it will function with the latch and

vehicle belt system."  According to Mr. Phung's notes, "They [Mr. Lehman and Mr. Anderson] agreed to: … moving the tension meter system to the foot so it will function with the latch and vehicle belt system" (emphasis added):

Base
- They agreed to:
1. the shape changes I wanted to make to the outer shape of the base.
2. moving up the bar off the bottom surface of the base.
3. rounding off the bar.
4. making the base like a bucket with a lid, moving the part line to the top edge of the base so we can round off the bottom edges and have a solid bottom.
5. moving forward with the 2 auto lock mechanism with the latch buckles. immi makes the mechanism and lr is waiting for a quote. this system will take away the pocket and add one or two release buttons to pull the latch buckles out.
6. moving the tension meter system to the foot so it will function with  the latch and vehicle belt system.
7. they asked to have details molded into the bottom of the base to control the pivot point of the base. they feel this feature is one of the reasons why their seat performed so much better than competitors in crash test.
8. they are thinking to mold the bar as a gas assist part but we may change the design to a two part assembly to match the direction the bucket handle is heading in.

38.    A true and correct copy of Mr. Phung's November 11, 2010 notes is attached as Exhibit B (redacted).

39.    On or about May 24, 2011, Mr. Perlman and Mr. Phung conceived of a base control interface concept for UPPAbaby's MESA® infant car seat.  Mr. Perlman put their conception in writing and shared it with Mr. Anderson.  The concept was a significant contribution later claimed in the '124 Patent.  Specifically, Mr. Perlman wrote to Mr. Anderson as follows: "I [Mr. Perlman] have uploaded the idea that we [Mr. Perlman and Mr. Phung] have been working on for the new control interface area.  Take a look and we can discuss further tomorrow during our call."  The images that Mr. Perlman shared with Mr. Anderson include as follows:







40.     A true and correct copy of Mr. Perlman's and Mr. Phung's May 24, 2011 images shared with Mr. Anderson, and accompanying correspondence (redacted), is attached as Exhibit C.

41.     On or about June 9, 2011, Mr. Perlman and Mr. Phung refined the base control interface concept for UPPAbaby's MESA® infant car seat.  Mr. Perlman put their refinement in writing and shared it with Mr. Anderson and Mr. Lehman.  The refinement was a significant contribution later claimed in the '124 Patent.  Specifically, Mr. Perlman wrote to Mr. Anderson and Mr. Lehman as follows: "I am hoping to have feedback to you on all the base questions (with

design tweaks) by the end of today…Once I button up the tweaks and comments for the base I will get together sketches for you as well."  The images that Mr. Perlman shared with Mr. Anderson and Mr. Lehman include as follows:



42.    A true and correct copy of Mr. Perlman's and Mr. Phung's June 9, 2011 images shared with Mr. Anderson and Mr. Lehman, and accompanying correspondence, is attached as Exhibit D.

43.    On or about June 16, 2011, Mr. Perlman and Mr. Phung further refined the base control interface concept for UPPAbaby's MESA® infant car seat.   Mr. Perlman put their refinement in writing and shared it with Mr. Anderson.   The refinement was a significant contribution later claimed in the '124 Patent.   Specifically, Mr. Perlman wrote to Mr. Anderson as follows: "Here's a file showing the tweaks for the control area of the base…The most major change is the indicator and foot button area.   We [Mr. Perlman and Mr. Phung] have decided to isolate this section by putting a small recess in the base surface to encapsulate the button and window." The images that Mr. Perlman shared with Mr. Anderson include as follows:



44.    A true and correct copy of Mr. Perlman's and Mr. Phung's June 16, 2011 images shared with Mr. Anderson, and accompanying correspondence, is attached as Exhibit E.

45.    On or about July 27, 2011, Mr. Perlman created two videos of a prototype of UPPAbaby's MESA® infant car seat including the base assembly.

46.     Prior to November 17, 2011, Lerado and UPPAbaby decided that, based on UPPAbaby's refinements, UPPAbaby would be responsible for providing Computer Aided Design (CAD) sketches of the base architecture in its final form.

47.     On or about January 31, 2012, Mr. Perlman further refined the base control interface concept for UPPAbaby's MESA® infant car seat.  Mr. Perlman put his refinement in writing and shared it with Mr. Anderson.  The refinement was a significant contribution later claimed in the '124 Patent.

48.     On or about March 26, 2012, Lerado obtained an estimate for a prototype of a base assembly incorporating all of Messrs. Phung, Perlman, Lehman, and Anderson's significant contributions to the conception of the invention later claimed in the '124 Patent.

49.     On or about May 14, 2012, Lerado prepared a tooling schedule including for the base assembly incorporating all of Messrs. Phung, Perlman, Lehman, and Anderson's significant contributions to the conception of the invention later claimed in the '124 Patent.

50.     On or about July 20, 2012, Messrs. Phung, Perlman, Lehman, and Anderson participated in a video conference, during which all of Messrs. Phung, Perlman, Lehman, and Anderson made significant contributions to the conception of the invention later claimed in the '124 Patent.

51.     The above-identified dates, events, activities, quotes, and drawings are just a few examples of Messrs. Phung, Perlman, Lehman, and Anderson's joint inventorship.  UPPAbaby has several years of additional evidence including evidence of joint inventorship and continued collaboration.

### UPPAbaby's MESA® Infant Car Seat

52.     UPPAbaby sold the original MESA® infant car seat from 2012 until 2022.

53.     UPPAbaby's second generation MESA®, the MESA® V2, was released in 2022.

54.     True and correct images of UPPAbaby's MESA® V2, the version that UPPAbaby makes and sells at present day and which Dorel has accused of infringing the '124 Patent, are reproduced below.  The first image is of the MESA® V2 infant car seat with base.  The second image is of the MESA® V2 base alone.



55.     UPPAbaby's third generation MESA®, the MESA® MAX, was released in 2023.

**Lerado Filed the '124 Patent Without UPPAbaby's Knowledge or Consent**

56.     On March 24, 2014, Lerado filed a patent application entitled "Child Restraint Having Indicator Device," which issued on April 19, 2016 as the '124 Patent and named only two inventors, Mr. Lehman and Mr. Anderson of Lerado.

57.     The '124 Patent includes claims reciting Mr. Perlman's and Mr. Phung's idea for a base control interface concept.  For example and without limitation, Claim 1 recites (emphasis added):

1.  A child restraint used in coupling with a safety seat, comprising:

a base body configured to be positioned on a vehicle seat by a securing device, wherein the base body comprises an upper shell coupling with the safety seat;

a foot coupled to a bottom of the base body;

a resilient member disposed between the base body and the foot to maintain a compressible distance between the foot and the base body;

*an indicator device disposed on the base body and located above the foot, configured to display a first signal and a second signal;*

a linkage assembly positioned between the base body and the foot, wherein when the base body is secured by the securing device, *the foot triggers the indicator device* by the linkage assembly such that *the indicator device displays the second signal*;

a connecting arm connected between the linkage assembly and the foot such that a lower end of the linkage assembly retains a first constant distance from the foot; and

a releasing member mounted on the base body and operably connected to the connecting arm, configured to drive the connecting arm to disengage from the foot such that the lower end of the linkage assembly retains a second constant distance from the foot, wherein the second constant distance is different from the first constant distance;

*wherein when the base body is not secured by the securing device, the indicator device is not triggered by the foot, and displays the first signal; and*

*wherein when the base body is secured by the securing device, the base body is compressed toward the foot to trigger the indicator device, such that the indicator device displays the second signal.*

58.    Also on March 24, 2014, a first assignment was recorded in the U.S. Patent and Trademark Office assigning the '124 Patent application from Mr. Lehman and Mr. Anderson to Lerado (Zhong Shan) Industrial Co., Ltd. in China.

59.    A true and correct copy of the first assignment is attached as Exhibit F.

60.    Lerado filed the '124 Patent without UPPAbaby's knowledge or consent.

61.    UPPAbaby inventors Mr. Phung and Mr. Perlman made significant contributions to the conception of at least claims 1, 3, 4, 10, 13, and 14 of the '124 Patent during joint

collaborations with Lerado's named inventors and should have been named as co-inventors alongside Mr. Lehman and Mr. Anderson.

### Dorel Acquired the '124 Patent from Lerado

62.     On information and belief, Dorel is a wholly-owned subsidiary of Dorel Industries Inc., a publicly-traded Canadian company ("Dorel Industries").

63.     On information and belief, Dorel Industries acquired Lerado, including the patent application that matured into the '124 Patent that Dorel now asserts against UPPAbaby.

64.     On June 16, 2014, two months after Lerado filed the '124 Patent without UPPAbaby's knowledge or consent, Dorel Industries announced in a publicly-filed press release:

> "that it [Dorel Industries] has signed an agreement to acquire the juvenile business of Hong Kong-based Lerado Group…Lerado Group is a subsidiary of Lerado Group (Holding) Company Limited, a publicly traded company listed on the Hong Kong Stock Exchange."

The press release also states that "the acquisition will accelerate the Company's [Dorel Industries'] plans to grow in the Asian market place, an area of opportunity that thus far has been under exploited" and that Dorel Industries will "supply Lerado's current customers at a service level that they have come to expect from Lerado."

65.     A true and correct copy of the June 16, 2014 press release is attached as Exhibit G.

66.     UPPAbaby was one of Lerado's customers at the time Dorel Industries acquired Lerado.

67.     On November 3, 2014, Dorel Industries announced in a publicly-filed press release that "it [Dorel Industries] has completed its previously-announced acquisition of the juvenile business of Hong Kong-based Lerado Group."

68.     A true and correct copy of the November 3, 2014 press release is attached as Exhibit H.

69.     UPPAbaby had been selling the jointly-designed MESA® infant car seat, with Lerado as its vendor, for two years at the time Dorel Industries acquired Lerado.

70.     On May 7, 2015, Dorel Industries announced in a publicly-filed press release that it had "rebranded" Lerado as "Dorel Juvenile China."

71.     A true and correct copy of the May 7, 2015 press release is attached as Exhibit I.

72.     On January 19, 2016, a second assignment was recorded in the U.S. Patent and Trademark Office changing the name of Lerado to "Dorel Juvenile (Zhongshan) Product Co., Ltd." in China (hereinafter, "Dorel Zhongshan").

73.     A true and correct copy of the second assignment is attached as Exhibit J.

74.     Dorel represented to the U.S. Patent and Trademark Office that the second assignment was a "CHANGE OF NAME" conveyance.

75.     When the '124 Patent issued two months later on April 19, 2016, Dorel Zhongshan was listed on the face of the patent as both the Applicant and Assignee.

76.     During prosecution, Defendant Dorel and Dorel Zhongshan had the obligation and opportunity to name Mr. Phung and Mr. Perlman as co-inventors of the inventions claimed in the '124 Patent.

77.     During prosecution, Defendant Dorel and Dorel Zhongshan failed to name Mr. Phung and Mr. Perlman as co-inventors of the inventions claimed in the '124 Patent.

78.     Inventorship of the '124 Patent is incorrect as a direct and proximate result of Defendant Dorel and Dorel Zhongshan's failure to name Mr. Phung and Mr. Perlman as co-inventors of the inventions claimed in the '124 Patent.

**UPPAbaby and Dorel's Memorandum of Understanding**

79.     When Dorel Industries acquired Lerado, Dorel became UPPAbaby's new vendor.

15

80.     Dorel continued to manufacture UPPAbaby's MESA® infant car seat for several years.  However, the parties' relationship deteriorated over time due to quality control issues at Dorel's manufacturing facilities.

81.     In 2019, the parties entered into a Memorandum of Understanding ("MOU") executed on December 5, 2019 by Robert J. Hughes, Vice President-Global Operations Monahan Products, LLC (for UPPAbaby) and Gary D. Pruit, Group COO (for Dorel).

82.     A true and correct copy of the MOU is attached as Exhibit K.

83.     The MOU imposed quality control requirements on Dorel, including that "Supplier [Dorel] is 100% responsible for manufacturing a high quality product as outlined in Monahan Products, LLC Quality Test Plan (QTP)."

84.     As consideration, Dorel received exclusive manufacturing rights to UPPAbaby's MESA® infant car seat, and UPPAbaby received exclusive ownership of all intellectual property rights related to UPPAbaby products.

85.     The MOU gave UPPAbaby exclusive ownership of intellectual property:

"Monahan Products, LLC exclusively owns the IP rights to all product and components which were initially designed or the parts solely completed by Monahan when jointly designed with the supplier.  Monahan Products, LLC commits to a minimum term of 2 years of exclusive manufacturing rights to manufacturer provided there is no breach of contract.  Supplier [Dorel] is prohibited to file any form of patents, related to Monahan Products, in any Country without the expressed written consent of Monahan Products, LLC prior to filing.  All patents filed on Monahan Products, LLC are the Exclusive Property of Monahan Products, LLC.  If a patent already exists, it must be disclosed prior to execution of the agreement.  All improvements related to said patents(s) are the exclusive rights of Monahan Products, LLC and can not be used on any other of suppliers [Dorel's] products without permission." (emphasis added)

86.     The parties agreed that UPPAbaby exclusively owns all intellectual property rights related to UPPAbaby products: "All patents filed on Monahan Products, LLC are the Exclusive Property of Monahan Products, LLC."

87.     Pursuant to the MOU, Dorel was required to disclose preexisting patents prior to execution of the MOU: "If a patent already exists, it must be disclosed prior to execution of the agreement."

88.     Dorel did not disclose the '124 Patent prior to execution of the MOU.

89.     Dorel did not disclose any patents or patent applications prior to execution of the MOU.

90.     Dorel's failure to disclose the '124 Patent prior to execution of the MOU constituted a material breach of contract of the MOU and caused harm to UPPAbaby.

91.     UPPAbaby owns the '124 Patent pursuant to the terms of the MOU.

92.     Dorel does not own the '124 Patent pursuant to the terms of the MOU.

93.     The MOU is a legally binding agreement.  Both UPPAbaby and Dorel treated the MOU as a legally binding agreement.

94.     As evidence that Dorel treated the MOU as a legally binding agreement, Dorel wrote to UPPAbaby on January 19, 2021 "pursuant to the terms of our Memorandum of Understanding (MOU) with Uppababy dated December, 2019 (the "**Agreement**")" (emphasis is Dorel's).

95.     A true and correct copy of Dorel's January 19, 2021 letter is attached as Exhibit L.

96.     In Dorel's January 19, 2021 letter, Dorel sought UPPAbaby's approval of a change in Dorel's ownership because the MOU identifies "[c]hange of ownership" as a breach of contract.

97.     Dorel and UPPAbaby treated the MOU as a legally binding agreement.

**Dorel's Post-Issuance Transactions and Assignments of the '124 Patent**

98.     On March 19, 2021, Dorel Industries announced in a publicly-filed press release "that is [it] has entered into an agreement to sell its juvenile products manufacturing facility in

Zhongshan, China to Guangdong Roadmate Group Co., Ltd." and that "[t]he sale transaction does not include Dorel Juvenile's domestic sales operation based in Shanghai that was acquired along with the manufacturing facility in 2014."

99.     A true and correct copy of the March 19, 2021 press release is attached as Exhibit M.

100.    On March 31, 2021, Dorel Industries announced in a publicly-filed press release "that it has completed the previously-announced sale of its juvenile products manufacturing facility in Zhongshan, China to Guangdong Roadmate Group Co., Ltd."

101.    A true and correct copy of the March 31, 2021 press release is attached as Exhibit N.

102.    On December 3, 2021, a third assignment was recorded in the U.S. Patent and Trademark Office changing the name of Dorel Zhongshan to "Zhongshan Roadmate Juvenile Product Co., Ltd." in China (hereinafter, "Zhongshan Roadmate").

103.    A true and correct copy of the third assignment is attached as Exhibit O.

104.    Guangdong Roadmate Group Co. Ltd. ("Guangdong Roadmate"), which on information and belief is related to the third assignee Zhongshan Roadmate, continues to manufacture UPPAbaby's MESA® infant car seat in the same Zhongshan, China manufacturing facility since Dorel Industries sold the facility.

105.    Dorel represented to the U.S. Patent and Trademark Office that the third assignment was a "CHANGE OF NAME" conveyance.

106.    A certified translation of the third assignment, from Chinese to English, was filed in the U.S. Patent and Trademark Office identifying a common director between Dorel Zhongshan

("Fu Yingxi") and Defendant Dorel, whose filings with the Secretary of the Commonwealth of Massachusetts likewise identify "Yingxi Fu" as its Director.

107.    A true and correct copy of Dorel's filing with the Secretary of the Commonwealth of Massachusetts is attached as Exhibit P.

108.    On information and belief, Dorel Zhongshan's Director "Fu Yingxi" is the same person as Defendant Dorel's Director "Yingxi Fu."

109.    A certified translation of the third assignment, from Chinese to English, was filed in the U.S. Patent and Trademark Office identifying Martin Schwartz as Dorel Zhongshan's "Legal representative" and "Board Chairman."

110.    On information and belief, Mr. Schwartz is President and Chief Executive Officer of Defendant Dorel's parent entity, Dorel Industries.

111.    Also on December 3, 2021, the same day Dorel Zhongshan represented that it changed its name to Zhongshan Roadmate, a fourth assignment was recorded in the U.S. Patent and Trademark Office assigning the '124 Patent from Zhongshan Roadmate to Shanghai Dorel Juvenile Co., Ltd. in China (hereinafter, "Dorel Shanghai").

112.    A true and correct copy of the fourth assignment is attached as Exhibit Q.

113.    Dorel Shanghai is the last recorded assignment in the U.S. Patent and Trademark Office.

114.    Later that same month, on December 13, 2021, Dorel Industries announced in a publicly-filed press release that "it [Dorel Industries] has entered into a definitive agreement to sell its remaining juvenile products manufacturing facility [in China]…  This sale follows the March 2021 disposition by Dorel of its Zhongshan based manufacturing facility."  The press release also states that "[n]ow that we will no longer own facilities in China," Dorel Industries "is

also expected to reduce volatility in the direct costs of manufacturing due to variations in the Chinese currency and commodity prices."

115.    A true and correct copy of the December 13, 2021 press release is attached as Exhibit R.

### Dorel Threatened to Sue UPPAbaby for Infringing the '124 Patent

116.    On November 1, 2022, Dorel threatened to sue UPPAbaby for infringing the '124 Patent unless UPPAbaby pays a licensing fee to continue selling UPPAbaby's MESA® infant car seat.

117.    A true and correct copy of Dorel's cease and desist letter is attached as Exhibit S.

118.    In Dorel's cease and desist letter, Dorel represented that it was "writing to put you on notice of Dorel's rights" in the '124 Patent.

119.    Counsel for the parties have exchanged several letters but have not come to agreement on inventorship of the '124 Patent; breach of the MOU; or ownership of the '124 Patent.

### COUNT I
### Correction of Named Inventor on U.S. Patent No. 9,315,124 Pursuant to 35 U.S.C. § 256

120.    The allegations of paragraphs 1 through 119 of this Complaint are repeated, re-alleged, and incorporated herein as if fully set forth in this Count.

121.    Mr. Phung and Mr. Perlman made independent, significant contributions to the conception and reduction to practice of the inventions claimed in at least claims 1, 3, 4, 10, 13, and 14 of the '124 Patent.

122.    Mr. Phung and Mr. Perlman are co-inventors of the '124 Patent with named inventors Mr. Lehman and Mr. Anderson.

123.     The inventorship of the '124 Patent is incorrect because through omission, inadvertence and/or error, Mr. Phung and Mr. Perlman were not listed as a co-inventors of the '124 Patent.

124.     UPPAbaby maintains a financial interest in the '124 Patent because its employees including Mr. Phung and Mr. Perlman are obligated to assign inventions to UPPAbaby, and thus has been injured by the issuance of a patent listing the incorrect inventor and owner.

125.     UPPAbaby seeks an order directing the Director of the United States Patent and Trademark Office to correct inventorship of the '124 Patent pursuant to 35 U.S.C. § 256.

## COUNT II
## Breaches of Contract Under Massachusetts State Law

126.     The allegations of paragraphs 1 through 125 of this Complaint are repeated, re-alleged, and incorporated herein as if fully set forth in this Count.

127.     The Memorandum of Understanding is a valid and enforceable contract.

128.     Pursuant to the MOU, Dorel was obligated to, *inter alia*, disclose preexisting patents prior to execution of the MOU: "If a patent already exists, it must be disclosed prior to execution of the agreement."

129.     Dorel did not disclose the '124 Patent prior to execution of the MOU.

130.     Dorel did not disclose any patents or patent applications prior to execution of the MOU.

131.     Dorel's failure to disclose the '124 Patent prior to execution of the MOU constituted a breach of contract of the MOU and caused harm to UPPAbaby.

132.     In addition, pursuant to the MOU, Dorel was obligated to, *inter alia*, transfer ownership of the '124 Patent to UPPAbaby: "All patents filed on Monahan Products, LLC are the Exclusive Property of Monahan Products, LLC."

21

133.   Dorel has not transferred ownership of the '124 Patent to UPPAbaby.

134.   Dorel's failure to transfer ownership of the '124 Patent to UPPAbaby constituted a breach of contract of the MOU and caused harm to UPPAbaby.

135.   Dorel's breaches of the MOU are the direct, proximate and actual cause of damage to UPPAbaby including but not limited to in the form of loss of use of its intellectual property rights.

136.   UPPAbaby seeks damages in an amount to be determined at trial.

### COUNT III
### Declaratory Judgment of Ownership Pursuant to 28 U.S.C. § 2201-02

137.   The allegations of paragraphs 1 through 136 of this Complaint are repeated, re-alleged, and incorporated herein as if fully set forth in this Count.

138.   The Memorandum of Understanding is a valid and enforceable contract.

139.   Pursuant to the MOU, Dorel agreed that UPPAbaby exclusively owns all intellectual property rights related to UPPAbaby products: "All patents filed on Monahan Products, LLC are the Exclusive Property of Monahan Products, LLC."

140.   UPPAbaby owns the '124 Patent pursuant to the terms of the MOU.

141.   Dorel does not own the '124 Patent pursuant to the terms of the MOU.

142.   An actual, present and justiciable controversy has arisen concerning the ownership of the '124 Patent.

143.   UPPAbaby seeks declaratory judgment from this Court that UPPAbaby is the sole owner of the '124 Patent pursuant to the terms of the parties' MOU.

### DEMAND FOR A JURY TRIAL

144.   UPPAbaby respectfully requests a jury trial in this action on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, UPPAbaby prays for judgment against Dorel, and that the Court award the following relief:

A.  Judgment in UPPAbaby's favor against Dorel on all causes of action alleged herein;

B.  An order declaring that Mr. Phung and Mr. Perlman are co-inventors of the inventions claimed in U.S. Patent No. 9,315,124;

C.  An order directing the Director of the United States Patent and Trademark Office to correct inventorship of U.S. Patent No. 9,315,124 by adding Mr. Phung and Mr. Perlman as co-inventors pursuant to 35 U.S.C. § 256;

D.  An order directing Dorel to assign ownership to UPPAbaby via written assignment document including all right, title, and interest in U.S. Patent No. 9,315,124, and further to execute and file with the United States Patent and Trademark Office all documents necessary to effectuate said assignment in the United States Patent and Trademark Office;

E.  Award UPPAbaby damages in an amount to be determined at trial;

F.  Declare this case exceptional under 35 U.S.C. § 285 and award UPPAbaby its reasonable attorneys' fees, expenses, and costs incurred in this action; and

G.  Such other and further relief as this Court deems just and proper.

Dated: March 20, 2023          Respectfully submitted,

By:   */s/ Craig R. Smith*
      Craig R. Smith (Mass. BBO No. 636,723)
      **LANDO & ANASTASI, LLP**
      60 State Street – 23rd Floor
      Boston, MA 02109
      Tel:   (617) 395-7000
      Fax:  (617)-395-7070
      csmith@lalaw.com

      ***Attorneys for Plaintiff Monahan Products, LLC d/b/a UPPAbaby***